IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 21, 2024 Session

IN RE ESTATE OF RICHARD WAYNE PENNIMAN

**Appeal from the Circuit Court for Davidson County**
**No. 20P890     David Randall Kennedy, Judge**
_____

**No. M2023-00075-COA-R3-CV**
_____

This appeal arises out of the trial court's removal of the appellant as co-personal representative of a probate estate. The appellant also appeals the trial court's ruling that he forfeited his right to a share of the estate assets. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which ARNOLD B. GOLDIN and KENNY ARMSTRONG, JJ., joined.

Richard Manson and Isaac T. Conner, Nashville, Tennessee, for the appellant, Peyton Penniman.

Tim Warnock and Keane Barger, Nashville, Tennessee, for the appellees, Freka Merrell; Daniel Jones; Tangeleda Trawick, on behalf of Elnora Connor; Ray Penniman, personal representative of the estate of Gail June Penniman; and Ernestine Penniman.

**OPINION**

**BACKGROUND**

During his lifetime, Richard Wayne Penniman (the "Decedent") was a highly accomplished singer, songwriter, and recording artist known professionally as Little Richard. The Decedent died testate on May 9, 2020. The Decedent's Last Will and Testament (the "Will"), executed June 24, 2011, nominates one of the Decedent's brothers, Peyton Penniman ("Mr. Penniman"); one of the Decedent's sisters, Freka Merrell ("Ms. Merrell"); and the Decedent's longtime agent and personal attorney, William R. Sobel ("Mr. Sobel"), as Co-Personal Representatives of the Decedent's probate estate (the

"Estate"). The Circuit Court for Davidson County (the "trial court") issued letters testamentary to those nominees. The Will named nine beneficiaries (the "Beneficiaries"), two of whom are Mr. Penniman and Ms. Merrell. The Decedent bequeathed to these Beneficiaries "all rights in and to any royalties or other rights to compensation from any songs, compositions, recordings or otherwise, and also specifically including all rights to the use or exploitation of [the Decedent's] name, likeness and image[.]" More specifically, the Will provided:

## I.   Disposition of Estate.

* * *

**Special Provision for Rights to Publicity.** It is my intent and desire that my [B]eneficiaries will cooperate among themselves and with the Personal Representatives to reach an agreement, as soon as possible following my death, to create a structure and mechanism for the joint and unified use and exploitation of the portion of my estate consisting of the rights to commercial exploitation and other use of my name, photograph or likeness as described in Tennessee Code Annotated § 47-25-1103 ("Publicity Rights"). In that regard, I urge my Beneficiaries and Personal Representatives to establish, as soon as practical, a Tennessee Limited Liability Company or other mutually agreeable entity, to be owned in equal shares by my Beneficiaries, to control, manage and oversee all uses of the Publicity Rights for the mutual benefit of the Beneficiaries, to the end that decisions with respect to any commercial use or exploitation of the Publicity Rights will be made in accordance with the wishes of a majority of the Beneficiaries. The Personal Representatives shall not distribute the portion of my estate consisting of the Publicity Rights until a majority of my Beneficiaries agree upon the structure and mechanism for the joint management and control of the Publicity Rights as described herein, and any plan adopted by the majority shall be implemented by my Personal Representatives. . . . If any Beneficiary should thereafter, by any act or omission to act, prevent implementation of any plan so adopted by the majority for the future management of the Publicity Rights, said Beneficiary shall be deemed as a result of such acts or omissions, to forfeit any right to share in the Publicity Rights, and his or her interest in the Publicity Rights shall then pass to the remaining Beneficiaries, in equal shares. I further authorize my Personal Representatives, in their sole discretion, to execute such contracts and conduct such business in the name of my Estate as they deem advisable to preserve or enhance the value of the Publicity Rights pending the adoption and implementation of a plan for post-distribution management of the Publicity Rights as described herein.

On November 3, 2020, the Beneficiaries received an offer from Primary Wave Entertainment ("Primary Wave") to purchase the Estate's intellectual property rights in the Decedent's music and the exclusive right to exploit the Publicity Rights. For these rights, Primary Wave would pay the Estate a one-time lump sum amount plus a percentage of the net earnings from Primary Wave's exploitation of the Publicity Rights.[1] At the instruction of the Beneficiaries, the Estate hired a transactional attorney, Carrie Casselman, to negotiate on its behalf with Primary Wave.

On May 14, 2021, five of the nine beneficiaries (the "Majority Beneficiaries") voted to adopt the offer from Primary Wave, subject to further negotiations by Ms. Casselman. Specifically, Ms. Casselman was to attempt to negotiate an increase in the payment price and the percentage of net earnings that the Beneficiaries would receive from the exploitation of the Publicity Rights. However, they authorized her to accept any offer from Primary Wave that included terms more favorable to the Estate. Ms. Merrell is one of the Majority Beneficiaries. Mr. Penniman is not.

On May 17, 2021, Primary Wave forwarded a second offer to Ms. Casselman. The new offer included a one-time lump sum payment plus an increased percentage of the net earnings from Primary Wave's exploitation of the Publicity Rights. Ms. Casselman immediately forwarded the new offer to the Co-Personal Representatives and counsel for the Estate, Charles W. McElroy ("Mr. McElroy"). On May 20, 2021, Mr. Penniman emailed[2] Mr. Sobel and copied the Beneficiaries and Ms. Casselman. For unexplained reasons, he also sent this email to at least one employee of Primary Wave. The email began:

Bill,

Giving Primary Wave Payten Music and the Little Richard Museum/Library without any financial compensation to the [B]eneficiaries, as proposed by Freka Merrell, in an email dated May 19, 2021,[3] is the last straw.

He then listed a number of grievances with the services Mr. Sobel provided to the Decedent during the Decedent's lifetime and with the way Mr. Sobel had interacted with the Beneficiaries during the estate administration. The final paragraph of the email states:

---

[1] Certain matters at issue in this case, including the valuation and disposition of the assets of the Estate, were placed under seal by the trial court, and the parties were granted leave to file documents including any such information under seal in this Court.

[2] This email was sent from the email address of Jacqueline Penniman, Mr. Penniman's wife. However, it is undisputed that the email was sent by Mr. Penniman.

[3] The record does not contain the email from Ms. Merrell referenced by Mr. Penniman.

6. All of this is a legal shame. At this time, it may be time to go public. I have the machinery in place. I believe it might be time for the public to know what is going on. Of the nine beneficiaries, eight are senior citizens. Black people, especially black entertainers have had a history of being robbed. Hopefully, this is not one. Could this be a civil rights issue?

Peyton Penniman
Co-executor

The following day, Primary Wave's senior counsel emailed Ms. Casselman and withdrew Primary Wave's offer. In so doing, he noted that Primary Wave was copied on Mr. Penniman's May 20 email and "ha[d] no interest in being involved in a family dispute[.]" Primary Wave has not made any further offers to purchase the Publicity Rights. Ms. Merrell testified that the Estate has subsequently received one other offer from another potential buyer but that this subsequent offer was for an amount substantially less than Primary Wave's offer.

On June 24, 2021, Mr. Sobel forwarded a letter to Mr. McElroy resigning as Co-Personal Representative effective immediately. He stated that "personal health and family considerations" were the reasons for his resignation. He also stated that Peter Laird, who was nominated by the Decedent to act as Mr. Sobel's successor, "is 76 years old, [and] is unable to act" as his successor. On July 27, 2021, the Majority Beneficiaries filed a motion to remove Mr. Penniman as a Beneficiary of the Publicity Rights and to remove him as a Co-Personal Representative of the Estate (the "Motion to Remove").

The trial court held a one-day bench trial on the Motion to Remove on December 7, 2021. Ms. Merrell was the only witness that testified at the trial. At the conclusion of the trial, the trial court requested that the parties submit post-trial briefs that included additional briefing regarding whether the provision for the removal of a Publicity Rights Beneficiary was an *in terrorem* clause. On October 17, 2022, the trial court entered an Order (the "Removal Order") finding, in relevant part:

12. The Beneficiaries pursued the sale of [the] Publicity Rights to a third party for their commercial use and exploitation. [The] Beneficiaries voted (with five of the nine) supporting the establishment of a [limited liability company] to pursue sale of the Publicity Rights.

13. Despite the majority vote to establish [an LLC], [Mr.] Penniman refused to sign paperwork necessary to create the LLC.

* * *

- 4 -

16.  Effective May 14, 2021, a majority of [the] Beneficiaries voted to adopt a plan regarding the sale of [the] Publicity Rights to Primary Wave[.]

17.  The plan was to sell the Publicity Rights to Primary Wave in exchange for [a lump sum plus a percentage] of net earnings generated by Primary Wave through its exploitation of [the] Publicity Rights.

18.  The plan directed Ms. [] Casselman to attempt to negotiate the highest possible price, but ultimately to accept any amount above [the initial lump sum offered].

* * *

21.  The four dissenting Beneficiaries sought a sales price [higher than that offered by Primary Wave] and voted against the plan on that basis.

* * *

23.  On May 20, 2021, [Mr.] Penniman sent an email to Mr. Sobel with copies to Primary Wave's personnel, the Beneficiaries, and counsel. [Mr.] Penniman objected to the sale, listed numerous "grievances" and made numerous inflammatory remarks . . . .

24.  The [second] offer was consistent with the plan and acceptable to the majority of the Beneficiaries who had previously voted in favor of the plan[.]

* * *

26.  On May 21, 2021, Primary Wave withdrew its offer based on [Mr.] Penniman['s] email . . . .

* * *

28.  Since Primary Wave stopped communicating with the Estate, the highest offer received for Publicity Rights is [substantially less than that offered by Primary Wave].

29.  [Mr.] Penniman's actions prevented implementation of the plan.

30.  As a result of [Mr.] Penniman's conduct, he cost the Estate [a substantial amount].

(Record citations omitted).  Therefore, the trial court held:

> Clearly, [Mr.] Penniman in his capacity as both a Beneficiary and as a Co-Personal Representative, has acted in a manner that violates his duties and obligations relative to [the] Publicity Rights.  [Mr.] Penniman prevented implementation of the plan to convey [the] Publicity Rights to Primary Wave and cost the Estate [a substantial amount].
>
> In doing so, [Mr.] Penniman also breached his fiduciary duty as Co-Personal Representative[] pursuant to T.C.A. § 35-15-706(b) and § 30-1-151 and must be removed as a Co-Personal Representative of this Estate.  Likewise, the Movant and the Estate shall be and are entitled to be awarded attorney fees and costs.
>
> **IT IS THEREFORE ORDERED**, that [Mr.] Penniman shall be and is removed as Co-Personal Representative of the Estate . . . .
>
> **IT IS FURTHER ORDERED** that [Mr.] Penniman has forfeited any right, title, or interest by way of inheritance in the Publicity Rights . . . and use of his rights to the foregoing shall be distributed to the remaining eight (8) Will Beneficiaries in equal shares.
>
> **IT IS FURTHER ORDERED** that Movants and the Estate, subject to Local Rule 39 and T.C.A. § 35-15-1001(b)(13) shall be and are awarded all of their reasonable attorney['s] fees and discretionary costs incurred in this case which shall be taxed to [Mr.] Penniman . . . .

Mr. Penniman appeals the Removal Order.

## ISSUES

Mr. Penniman presents the following issues on appeal, which have been restated and condensed:

1. Whether the trial court erred in concluding that Mr. Penniman forfeited his right to inherit a share of the Publicity Rights.

2. Whether the trial court erred in removing Mr. Penniman as Co-Personal Representative.

The Majority Beneficiaries present the following issue on appeal, which has been slightly restated:

- 6 -

3. Whether the Majority Beneficiaries are entitled to an award of their reasonable attorney's fees and expenses incurred in this appeal.

## DISCUSSION

### A.

The Majority Beneficiaries filed a motion to dismiss this appeal. They argue that the Removal Order is not appealable as of right pursuant to Tennessee Rule of Appellate Procedure 3 because it is not a final judgment. Specifically, they point to the fact that the Removal Order "does not even adjudicate all of Mr. Penniman's rights and liabilities" because he is still a Beneficiary under the Will with respect to the remainder of the Estate's assets other than the Publicity Rights. Conversely, Mr. Penniman argues that Tennessee Code Annotated section 30-1-107(a) grants him an immediate appeal as of right. The Majority Beneficiaries argue that section 30-1-107 does not apply.

Section 30-1-107(a) provides an immediate appeal as of right to "[a]ny person who claims a right to execute a will . . . and who thinks that person to be injured by an order of the court awarding letters testamentary or of administration." We agree with the Majority Beneficiaries that the Removal Order does not fall within the scope of the plain language of section 30-1-107 because it only *removes* Mr. Penniman as a Co-Personal Representative and does not *award* letters testamentary or of administration. However, this Court has repeatedly "recognized the difficulty of applying the final judgment rule of Rule 3 to probate proceedings, which often contain multiple intermediate orders that are final with regard to certain discrete issues." *In re Est. of Schorn*, No. E2013-02245-COA-R3-CV, 2015 WL 1778292, at *7 (Tenn. Ct. App. Apr. 17, 2015) (citing *In re Est. of Goza*, No. W2013-00678-COA-R3-CV, 2014 WL 7235166, at *4 (Tenn. Ct. App. Dec. 19, 2014)). Moreover, "our courts have long entertained appeals from removed executors." *Est. of Pennington*, 1991 WL 102679, at *2 (Tenn. Ct. App. June 17, 1991). *See In re Wooten's Est.*, 85 S.W. 1105 (Tenn. 1905); *Rodes v. Boyers*, 61 S.W. 776 (Tenn. 1901); *Crozier v. Goodwin*, 69 Tenn. 125 (1878); 2 Jack W. Robinson, Sr. et al., *Pritchard on Wills and Administration of Estates* § 620 (6th ed. 2007).

Accordingly, we conclude that we have jurisdiction to review the Removal Order to the extent it pertains to Mr. Penniman's removal as Co-Personal Representative. The set of facts supporting Mr. Penniman's removal is the same set of facts supporting Mr. Penniman's forfeiture of his right to inherit a share of the Publicity Rights. Considering the amount of time and expense already expended in this litigation, we find that good cause exists to exercise our discretion, pursuant to Tennessee Rule of Appellate Procedure 2, to suspend the final judgment requirement and address both issues on their merits in this appeal. *See Est. of Schorn*, 2015 WL 1778292, at *7 (Rule 2 "permits us to suspend the final judgment requirement in our discretion if we find 'good cause' to do so and judicial economy would best be served 'by addressing the issues on their merits in this appeal.'"

(quoting *Est. of Goza*, 2014 WL 7235166, at *4; *Parker v. Lambert*, 206 S.W.3d 1, 4 (Tenn. Ct. App. 2006)).

**B.**

Mr. Penniman filed a motion, pursuant to Tennessee Rule of Appellate Procedure 14, for this Court to consider additional documents filed in the trial court after the entry of the Removal Order. Whether to consider post-judgment facts lies within our discretion. Tenn. R. App. P. 14(a). "While neither controlling nor fully measuring [our] discretion, consideration generally will extend only to those facts, capable of ready demonstration, affecting the positions of the parties or the subject matter of the action such as mootness, bankruptcy, divorce, death, other judgments or proceedings, relief from the judgment requested or granted in the trial court, and other similar matters." *Id*.

On February 27, 2023, during the pendency of this appeal, Mr. Penniman filed a motion in the trial court to stay the sale of any estate asset until a valuation of the intellectual property was completed and for Ms. Merrell to provide an inventory of the Estate reflecting the results of the valuation (the "Motion for Stay"). On June 12, 2023, the trial court entered an Order providing, in relevant part:

> 3. [Ms. Merrell[4]] is not required to complete an appraisal of the Estate assets prior to distribution and shall exercise her duties as Personal Representative to consider the best and most prudent course of action. All interested parties have the right to seek such relief in the future if deemed necessary.
>
> * * *
>
> 7. In the event [Ms. Merrell] desires to sell any Estate intellectual property asset . . . [she] must submit any offer or potential sale to the [trial court] for review and approval prior to the sale.

Mr. Penniman asks this Court to consider: (1) the Motion for Stay, (2) Ms. Merrell's response in opposition to the Motion for Stay, (3) the Estate's response in opposition to the Motion for Stay, and (4) the June 12, 2023 Order. The Majority Beneficiaries oppose Mr. Penniman's motion and argue that the post-trial filings "have no bearing" on the issues raised by Mr. Penniman on appeal because the trial court did not have the benefit of those filings when it entered the Removal Order. We agree and deny Mr. Penniman's Rule 14 motion as the facts in the record are sufficient to resolve this appeal.

---

[4] Due to the resignation of Mr. Sobel and the removal of Mr. Penniman, Ms. Merrell is the sole remaining Personal Representative.

## C.

A trial court's construction of a will involves questions of law, which we review de novo with no presumption of correctness. *Hargis v. Fuller*, No. M2003-02691-COA-R3-CV, 2005 WL 292346, at *3 (Tenn. Ct. App. Feb. 7, 2005) (citing *Briggs v. Est. of Briggs*, 950 S.W.2d 710, 712 (Tenn. Ct. App. 1997)). Because this case was tried by the trial court sitting without a jury, we review the trial court's factual findings de novo with a presumption of correctness, unless the preponderance of the evidence is otherwise. *Cross v. City of Memphis*, 20 S.W.3d 642, 644 (Tenn. 2000); *see also* Tenn. R. App. P. 13(d).

"The cardinal rule in construction of all wills is that the court shall seek to discover the intention of the testator and give effect to it unless it contravenes some rule of law or public policy." *Hargis*, 2005 WL 292346, at *4 (quoting *Briggs*, 950 S.W.2d at 712). "The testator's intention is to be ascertained from the particular words used in the will itself, from the context in which those words are used, and from the general scope and purposes of the will, read in light of the surrounding and attending circumstances." *Id.* (quoting *Presley v. Hanks*, 782 S.W.2d 482, 487 (Tenn. Ct. App. 1989)). However, we cannot read into a will "an intention not justified by the language of the writing itself." *In re Walker*, 849 S.W.2d 766, 768 (Tenn. 1993) (quoting *Nichols v. Todd*, 101 S.W.2d 486, 490 (Tenn. Ct. App. 1936)).

The trial court found that a majority of the Beneficiaries adopted a plan to exploit the Publicity Rights and that Mr. Penniman's actions prevented implementation of that plan, therefore forfeiting his right to share in the Publicity Rights. Mr. Penniman argues that the trial court erred because the Majority Beneficiaries' agreement to accept Primary Wave's offer was not specific enough to constitute a "plan" as anticipated by the Will. Citing *Fisher v. Malmo*, 650 S.W.2d 43, 46 (Tenn. Ct. App. 1983), he notes that "[g]enerally, if a will has been drafted by an attorney, technical words should be given a technical meaning unless the intention of the testator is clearly to the contrary." An attorney drafted the Decedent's Will; however, unlike the *Fisher* court that was tasked with construing the meaning of "heir"—a technical word with a long-settled technical meaning—we are not tasked with construing the meaning of a "technical word." This is made clear by the fact that Mr. Penniman crafts his preferred definition of "plan" by piecing together Black's Law Dictionary definitions of "structure," "mechanism," "management," "control," and "business plan." Notably, none of these definitions are of the word at issue: "plan."

The Will anticipates an agreement by the Beneficiaries "to create a structure and mechanism for the joint and unified use and exploitation of the" Publicity Rights. It encourages—but does not require—the Beneficiaries to establish a legal entity to control, manage, and oversee the exploitation of the Publicity Rights "to the end that decisions with respect to any commercial use or exploitation of the Publicity Rights will be made in accordance with the wishes of a majority of the Beneficiaries." What it *does* require is that

the Personal Representatives implement "*any* plan adopted by the majority" of the Beneficiaries. (Emphasis added). Finally, it provides that any Beneficiary that "prevent[s] implementation of *any* plan so adopted by the majority for the future management of the Publicity Rights, . . . shall be deemed . . . to forfeit any right to share in the Publicity Rights[.]" (Emphasis added). Despite Mr. Penniman's insistence, we cannot conclude that the Will requires a specific plan when such a requirement is not justified by the language of the Will itself. Given the plain language of the Will, we conclude that the Majority Beneficiaries' agreement to enter into negotiations with Primary Wave and accept the best offer that could be reached in such negotiations was sufficient to constitute a "plan" as anticipated by the Will.

Mr. Penniman also argues that the plan had not been "adopt[ed] and implement[ed]." Therefore, he argues, he had discretion in his Co-Personal Representative capacity "to take any necessary action to ensure fair value is received for the Publicity Rights and [to ensure that] the Beneficiaries are not taken advantage of by large corporations or other individuals or entities in a superior financial position or with superior knowledge of the entertainment industry." Again, however, Mr. Penniman is asking us to read language into the Will that simply is not there. Had the Decedent intended the Beneficiaries to be protected from their own decision making, he could have provided for such safeguards within the Will. He did not. Although the Will grants the Personal Representative(s) sole discretion to "preserve or enhance the value of the Publicity Rights[,]" it also makes clear that the Personal Representatives' discretion ends upon "the adoption and implementation of a plan" by a majority of the Beneficiaries. Mr. Penniman insists that "adoption" means "[t]o accept, consent to, and put into effective operation," and "implementation" means "[a]n outline of steps needed to accomplish a particular goal." Even if he is correct about these definitions, it is clear that a majority of the Beneficiaries "accept[ed], consent[ed] to, and put into effective operation" a plan and had "an outline of steps needed to accomplish" that plan. The Will required the Co-Personal Representatives to implement the plan adopted by the Majority Beneficiaries, and Mr. Penniman had no authority to prevent the implementation of such plan. Moreover, the plain language of the Will provides that "any Beneficiary" shall be deemed to forfeit his share of the Publicity Rights if he prevents the implementation of the plan. We cannot read into the Will an exception for a Beneficiary that is acting as a Co-Personal Representative when such an exception does not exist. Therefore, Mr. Penniman cannot use his Co-Personal Representative capacity to shield himself from the consequences of his actions.

Lastly, Mr. Penniman argues that the trial court erred in determining that the provision forfeiting a Beneficiary's right to share in the Publicity Rights "shall be construed as an in terrorem clause." He argues that there is a "good faith and reasonable justification" exception to forfeiture under in terrorem clauses and that the trial court erred in not considering this exception. An in terrorem clause is a "forfeiture provision conditioned upon a contest of the will or any provision therein[.]" *Winningham v. Winningham*, 966 S.W.2d 48, 50 (Tenn. 1998). In this state, an in terrorem clause "will not be enforced where

a contest is pursued 'in good faith and upon probable cause.'" *Id.* at 51 (citing *Tate v. Camp*, 245 S.W. 839 (Tenn. 1922)).  However, Mr. Penniman's argument misconstrues the trial court's conclusion regarding this issue.  In the Removal Order, the trial court explained:

> During the course of the hearing, the parties were directed by the [trial court] to address whether the Publicity Rights provision in the Will is an *in terrorem* clause. Like an *in terrorem* clause, the Publicity Rights provision in [the] Will calls for a forfeiture in the event that a Beneficiary engages in certain prohibited conduct.
>
> However, a review of Tennessee case law . . . confirms that an *in terrorem* clause conditions forfeiture by a [w]ill [b]eneficiary upon the beneficiary contesting any provision of the [w]ill.
>
> The forfeiture of a Beneficiary in the Publicity Rights provision of [the] Will does not require a contest.
>
> All that is necessary in order to trigger a forfeiture by a Beneficiary in [the] Will is for the offending Beneficiary to violate his duties described in page 3 of the Will.

A plain reading of the Removal Order does not support Mr. Penniman's argument that the trial court found that the forfeiture provision in the Will is an in terrorem clause.  Therefore, the trial court did not err in failing to consider the "good faith and reasonable justification" exception applicable to in terrorem clauses.

We agree with the findings of the trial court that the Majority Beneficiaries adopted a plan to exploit the Publicity Rights and that Mr. Penniman prevented the implementation of that plan.  Consequently, the trial court did not err in holding that Mr. Penniman forfeited his right to share in the Publicity Rights.

## D.

The trial court found that Mr. Penniman breached his fiduciary duty to the Estate and removed him as a Co-Personal Representative of the Estate pursuant to Tennessee Code Annotated sections 35-15-706(b) and 30-1-151.  We review a trial court's decision to remove a personal representative under an abuse of discretion standard.  *See In re Graham*, No. M2021-00967-COA-R3-CV, 2022 WL 17008526, at *3 (Tenn. Ct. App. Nov. 17, 2022), *no perm. app. filed*.  As this Court has explained:

> A trial court abuses its discretion "only when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that

cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). Under this standard, we will not substitute our judgment for the judgment of the trial court. *Id.* (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998)). The abuse of discretion standard "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,'" and therefore "'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010) (quoting *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)).

*Allen v. Albea*, 476 S.W.3d 366, 373 (Tenn. Ct. App. 2015).

Mr. Penniman argues that his "objection" to the Majority Beneficiaries' plan should not have been cause for his removal because he was simply fulfilling his "duty to the Beneficiaries to take every reasonable action to ensure fair value is received for the Publicity Rights" and his "duty to provide the [B]eneficiaries with necessary, accurate information to make informed decisions regarding the administration, sale, and distribution of the Publicity Rights." He claims that he "only sought a brief delay for the sale of Publicity Rights to obtain an appraisal and ensure the [plan] reflected the fair market value of the Publicity Rights." However, these arguments are wholly unsupported by the facts in the record. As the trial court found, Mr. Penniman's May 20 email not only "objected" to the sale, but also "listed numerous 'grievances' and made numerous inflammatory remarks," including suggesting that this is a "civil rights issue" and threatening to "go public." Furthermore, we find Mr. Penniman's claim that he was simply seeking a "brief delay" to inform the Beneficiaries of the value of the Publicity Rights to be disingenuous given that he went out of his way to also send this email to an employee of Primary Wave.

Mr. Penniman also argues that his duty of prudent administration to the Estate "obligated" him to act as he did. A personal representative "is bound to demonstrate good faith and to exercise that degree of diligence, prudence, and caution which a reasonably prudent, diligent and conscientious business person would employ in the management of their own affairs of a similar nature." *In re Est. of McMillin*, No. E2020-00413-COA-R3-CV, 2021 WL 1235229, at *7 (Tenn. Ct. App. Apr. 1, 2021) (quoting *In re Est. of Inman*, 588 S.W.2d 763, 767 (Tenn. Ct. App. 1979)). Mr. Penniman conflates this with the duty of prudent administration that requires a trustee to "administer the trust as a prudent person would, by considering the purposes, terms, distributional requirements, and other circumstances of the trust." Tenn. Code Ann. § 35-15-804. Notably, this duty requires a trustee to "exercise reasonable care, skill and caution." *Id*. Irrespective of whether a valuation of the Publicity Rights was advisable, Mr. Penniman's May 20 email cannot be considered an exercise of that reasonable care, skill, and caution which a reasonably prudent, diligent and conscientious business person would employ in the management of their own affairs of a similar nature.

Mr. Penniman next argues that no statutory grounds existed for his removal as Co-Personal Representative. The trial court found that "in his capacity as both a Beneficiary and as a Co-Personal Representative, [Mr. Penniman] has acted in a manner that violates his duties and obligations relative to [the] Publicity Rights." Accordingly, the trial court concluded that he breached his fiduciary duty to the Estate, and his removal was appropriate pursuant to Tennessee Code Annotated sections 30-1-151 and 35-15-706(b). Section 30-1-119[5] provides for the removal of a personal representative "in accordance with the procedures in [Tennessee Code Annotated section] 35-15-706." Tenn. Code Ann. § 30-1-119. Section 35-15-706(b) grants a probate court the authority to remove a personal representative if:

> (1) The [personal representative] has committed a serious breach of trust;

> (2) Lack of cooperation among co[-personal representatives] substantially impairs the administration of the [estate];

> (3) Because of unfitness, unwillingness, or persistent failure of the [personal representative] to administer the [estate] effectively, the court determines that removal of the [personal representative] best serves the interests of the beneficiaries; or

> (4) There has been a substantial change of circumstances or removal is requested by all of the qualified beneficiaries, the court finds that removal of the [personal representative] best serves the interests of all of the beneficiaries and is not inconsistent with a material purpose of the trust, and a suitable [personal representative] is available.

Tenn. Code Ann. § 35-15-706(b). "A violation by a [personal representative] of a duty the [personal representative] owes to a beneficiary is a breach of trust." Tenn. Code Ann. § 35-15-1001. "A serious breach of trust may consist of *a single act that causes significant harm* or involves flagrant misconduct." Tenn. Code Ann. § 35-15-706, 2013 restated cmt. (emphasis added). Mr. Penniman's duty to the Estate and the Beneficiaries was to implement any plan to exploit the Publicity Rights adopted by a majority of the Beneficiaries. Mr. Penniman instead sabotaged that plan when he did not agree with it. This serious breach of trust supports the trial court's removal of Mr. Penniman under section 35-15-706(b). Accordingly, the trial court did not abuse its discretion in removing him as a Co-Personal Representative.

---

[5] Section 30-1-151 was transferred to section 30-1-119 effective July 15, 2021.

- 13 -

**E.**

The Majority Beneficiaries argue that they are entitled to their attorney's fees and expenses incurred on appeal pursuant to section 35-15-706(c). That section authorizes a court to "order such appropriate relief under [Tennessee Code Annotated section] 35-15-1001(b) as may be necessary to protect the [estate] property or the interests of the beneficiaries" in addition to removing the personal representative. Tenn. Code Ann. § 35-15-706(c). In turn, section 35-15-1001(b)(10) authorizes a court to "[o]rder any other appropriate relief whether provided elsewhere in this chapter, available at common law or under equity principles." Tenn. Code Ann. § 35-15-1001(b)(10). "The remedies for breach of trust in [section] 35-15-1001 are broad and flexible" and may include an "award [of] costs and attorney's fees as justice requires[.]" Tenn. Code Ann. § 35-15-1001, 2013 restated cmt.

The trial court awarded the Majority Beneficiaries their attorney's fees and expenses related to the Motion to Remove and taxed these fees and expenses to Mr. Penniman. Mr. Penniman does not appeal that award by the trial court. Given the specific facts of this case, we likewise exercise our discretion, in the interest of justice and equity, and award the Majority Beneficiaries their attorney's fees and expenses related to this appeal. These fees and expenses are taxed against Mr. Penniman. The trial court should determine a reasonable award of fees and expenses for this purpose on remand.

**CONCLUSION**

The judgment of the Circuit Court for Davidson County is hereby affirmed. The costs of this appeal are taxed to the appellant, Peyton Penniman, for which execution may issue if necessary. This case is remanded for further proceedings consistent with this Opinion.

_____
KRISTI M. DAVIS, JUDGE